O

# United States District Court
# Central District of California

| | |
|---|---|
| JAVIER AYALA; MARTHA AYALA,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PACIFIC COAST NATIONAL BANK;<br>SUNWEST BANK; THE WOLF FIRM;<br>ADOLFO SEDENO; JOYCE COOPER;<br>and DOES 1-100, inclusive,<br><br>　　　　　　Defendants. | Case № 5:16-cv-00723-ODW (JEM)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [10]** |

## I.   INTRODUCTION

On April 26, 2016, Plaintiffs Javier Ayala and Martha Ayala applied ex parte for a temporary restraining order enjoining Defendants from foreclosing on a house and vacant lot that they own. Plaintiffs did not serve their application on Defendants, who have not appeared in the action. For the reasons discussed below, the Court **DENIES** Plaintiffs' application. (ECF No. 10.)

## II.   FACTUAL BACKGROUND

Plaintiffs are the owners of a house and a vacant lot in Indio, California. (Compl. ¶¶ 1–2.) Plaintiffs, who allegedly do not read or write English, were asked by Defendant Adolfo Sedeno to co-sign a loan for a business he was starting. (*Id.*

¶ 15.) It appears that Plaintiffs co-signed said loan, and also signed a deed of trust transferring legal title of their home to Defendant Pacific Coast National Bank as trustee for the purpose of securing the loan. (Mot. at Exs. 1, 2.) Defendant Joyce Cooper notarized the deed of trust.

Plaintiffs make conflicting allegations as to their understanding of what they were signing. Plaintiffs first allege that they "never went to any banks or spoke to any loan officers and never submitted any loan applications," yet in the next paragraph allege that they understood that "they were going to co-sign for Defendant Sedeno to receive a loan." (Compl. ¶¶ 16, 17.) Plaintiffs then state that their signatures on some of the loan documents were actually forged, and that the "transaction . . . was procured through fraud." (Mot. 4.)

Presumably after either Plaintiffs or Defendant Sedeno defaulted on the loan, Defendants Pacific Coast National Bank and SunWest Bank then attempted to foreclose on their properties. (*Id.* ¶¶ 21–25.) To avoid foreclosure, Plaintiffs attempted to secure a loan modification from Defendants, but Defendants rejected their requests. (*Id.* ¶ 29.)

On April 19, 2016, Plaintiffs filed this action. Plaintiffs assert eight state law causes of action and two federal causes of action. The two federal causes of action are for violation of the Fair Debt Collection Practices Act, and violation of the Real Estate Settlement Procedures Act. On April 26, 2016, Plaintiffs filed this ex parte application for a temporary restraining order, seeking to enjoin a foreclosure that is scheduled to go forward on April 27, 2016. (ECF No. 10.) That ex parte application is now before the Court for consideration.

### III. LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief."

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest (the "*Winter* factors"). *Id.* at 20. "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (original emphasis). In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can [also] support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132, 1135 (holding that the "sliding scale" test remains viable "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest").

## IV. DISCUSSION

### A. Notice

Plaintiffs have not filed a proof of service showing that they served this application on Defendants. "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). That is, an ex parte TRO is generally appropriate when "notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

Here, Plaintiffs' counsel has not stated what efforts, if any, he has made to serve this application on Defendants. Nor would there appear to be any excuse for not doing so; indeed, Plaintiffs' counsel contacted Defendants to request that they

continue the very foreclosure that they now seek to enjoin. (Aldana Decl. ¶ 7, ECF No. 10.) Finally, Plaintiffs give no reason at all why notice to Defendant should not be required. Plaintiffs thus have not met the requirements of Rule 65(b). This is an independent ground for denying Plaintiffs' TRO request.

### B. *Winter* Factors

The Court finds that Plaintiffs have demonstrated neither a likelihood of prevailing on the merits, nor that the equities are in their favor. Plaintiffs thus have not satisfied the *Winter* test.

#### 1. Likelihood of Prevailing on Merits

The Court is unpersuaded that Plaintiffs are likely to prevail on the merits of their claims. District courts have uniformly held that foreclosure on a mortgage or deed of trust is not a collection of debt covered by the Fair Debt Collection Practices Act. *See, e.g.*, *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("[T]he activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."); *Smith v. Cmty. Lending, Inc.*, 773 F. Supp. 2d 941, 944 (D. Nev. 2011); *Odinma v. Aurora Loan Servs.*, No. C-09-4674 EDL, 2010 WL 2232169, at *11 (N.D. Cal. June 3, 2010) (collecting cases); *Jozinovich v. JP Morgan Chase Bank, N.A.*, No. C09-03326 TEH, 2010 WL 234895, at *6 (N.D. Cal. Jan. 14, 2010).

As to the Real Estate Settlement Procedures Act claim, it does not appear that the Act provides for injunctive relief, and therefore cannot be used to enjoin (even temporarily) the impending foreclosure. *Rivera v. BAC Home Loans Servicing, L.P.*, No. C 10-02439 RS, 2010 WL 2757041, at *4 (N.D. Cal. July 9, 2010). Moreover, claims under 12 U.S.C. § 2605 are subject to a three-year statute of repose, *see* 12 U.S.C. § 2614, and here it has been almost eight years since Defendants allegedly failed to make the disclosures required by the Act.

The remaining claims are state law claims. Not only do the state law claims clearly predominate in this action, but the federal claims are very likely subject to

dismissal. As a result, this Court lacks subject matter jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(2), (3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).

### 2. Equities

The Court is also unconvinced that the equities are in Plaintiffs' favor. The numerous contradictory assertions and allegations in both their Complaint and ex parte application suggest that Plaintiffs are not being truthful. For example, Plaintiffs appear to concede that they knew they were going to co-sign a loan for Defendant Sedeno, yet later assert that they had no idea what they were signing. Similarly, while Plaintiffs assert that the loan documents and deed of trust were not signed by them and were fraudulently procured, they were apparently willing to negotiate a modification to that very loan. While Plaintiffs suggest that they did so simply in an attempt to save their home from foreclosure, it is difficult to believe that they would agree to pay what effectively would be *a whole new mortgage* rather than just file suit for fraud.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Ex Parte Application for a Temporary Restraining Order. (ECF No. 10.)

**IT IS SO ORDERED.**

April 27, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**